UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| EDWIN A. CURRY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-03-S-1322-E |
| | ) | |
| MIKE DAWSON, | ) | |
| | ) | |
| Appellee. | ) | |

**ENTERED**
OCT - 3 2003

## MEMORANDUM OPINION

Appellant Edwin A. Curry appeals from the judgment of the United States Bankruptcy Court for the Northern District of Alabama, concluding that he failed to meet the burden of proving a willful violation of the automatic stay.[1] Upon consideration of the briefs of the parties and relevant legal authority, the court reverses the judgment of the bankruptcy court and remands the matter for further consideration of damages.

### I. STANDARD OF REVIEW

A district court assumes the role of an appellate court when reviewing the decision of a bankruptcy court. *See* 28 U.S.C. § 158(a). A bankruptcy court's findings of fact shall be upheld on appeal unless deemed clearly erroneous. *See* Bankr. R. 8013; *In re Downtown Properties, Ltd.*, 794 F.2d 647, 651 (11th Cir. 1986). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum*, 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed. 746 (1948). Further,

---

[1] *See* Judgment, ROA 5 (denotes record on appeal, document 5).

determinations of law are reviewed under a *de novo* standard of review. *See In re Kalter*, 292 F.3d 1350, 1352 (11th Cir. 2002).

"Whether a party's actions have violated the automatic stay is a question of law which is reviewed de novo." *Diviney v. NationsBank of Texas (In re Diviney)*, 225 B.R. 762 (10th Cir. BAP 1998) (citation omitted). This court reviews the bankruptcy court's finding that a creditor's action was not a "willful" violation of the stay for clear error. *Id.*

## II. FACTUAL BACKGROUND

Appellee, Mike Dawson, filed a process of garnishment on April 23, 2002, in state district court naming appellant, Edwin A. Curry, and his employer as garnishee.[2] Appellant filed a chapter 7 bankruptcy petition on May 24, 2002.[3] Appellee was named as an unsecured creditor in the chapter 7 petition.[4] Notice of appellant's bankruptcy was mailed to Appellee on May 28, 2003, and the notice contained a warning under the heading "CREDITORS MAY NOT TAKE CERTAIN ACTIONS."[5] Appellee received the notice of appellant's bankruptcy by mail sometime during the month of June 2003.[6]

Beginning on June 20, 2002, Appellee began receiving payments from the state district court as a result of his garnishment against appellant, and he received a total of $517.61 during the life of the garnishment.[7] Prior to receiving notice of the bankruptcy,

---

[2] *See* ROA 2, ¶ 10, ROA 3, ¶ 1.
[3] *See* ROA 2, ¶ 1.
[4] *See* ROA 2, ¶ 2.
[5] *See* ROA 2, ¶¶ 3,4,7.
[6] *See* ROA 2, ¶¶ 4-6, ROA 3, ¶ 3
[7] *See* ROA 2, ¶ 12, ROA 3, ¶ 2,7.

2

appellee received and cashed one check from the state district court as a result of the garnishment in the amount of $88.82.[8] An employee of counsel for appellant notified appellee via telephone on or about June 28, 2002, that appellant had filed a bankruptcy petition, and that such filing resulted in an automatic stay of all pending state court proceedings.[9] An employee of counsel for appellant telephoned appellee again on July 11, 2002, and once more informed him of appellant's bankruptcy filing and faxed appellee verification of same.[10]

After receiving notice of appellant's bankruptcy, appellee relied upon representations made to him by employees of the state court where he filed the garnishment, and from prior experience in a related case, to form the opinion that it was the responsibility of appellant's attorney to file the paperwork that would end the garnishment.[11] Appellee filed a request that appellant's employer be released from the process of garnishment on September 24, 2002, and returned the checks he had received and held from his garnishment against appellant.[12] The uncashed checks totaled $428.79.[13] The state court mailed a refund check in the amount of $428.79 to appellant's attorney on or about October 4, 2002.[14]

Appellant filed an adversary proceeding in bankruptcy court alleging that appellee

---

[8] *See* ROA 3, ¶ 2.
[9] *See* ROA 2, ¶¶ 7, 8.
[10] *See* ROA 2, ¶ 9.
[11] *See* ROA 3, ¶¶ 4-6.
[12] *See* ROA 2, ¶ 11; 3, ¶¶ 7, 8.
[13] *See* ROA 3, ¶ 7.
[14] *See* ROA 2, ¶ 13.

violated the automatic stay. During the trial, appellee testified that when he first received notice of appellant's bankruptcy, he went to the circuit clerk's office and asked one of the attendants what he should do.[15] Appellee maintains that he understood from court personnel that it was appellant's responsibility to stop the garnishment proceedings. After receiving several checks as a result of the garnishment proceedings, appellant testified that the following occurred:

> I collected the checks trying to find out what direction I needed to go and, there again, Judge Russell's secretary, as well as he later told me to obtain an attorney to straighten this out. His secretary told me to have Mr. Cobb file a stop of garnishment to stop the garnishment; whereas he refused. He said that it was my position to do so.[16]

None of the persons employed at the county courthouse from whom appellee solicited advice were attorneys.[17]

At the conclusion of trial, the bankruptcy court found the facts submitted by appellant and appellee as the findings of the court. The bankruptcy court further found that appellant "failed to carry his burden of proof to persuade the court that the money was received and accepted by the [appellee] after notice of the bankruptcy case and that this failure to persuade on the burden of proof results in the conclusion that the violation was not willful . . . ."[18] The bankruptcy court entered judgment for appellee, concluding that "While the Plaintiff was able to prove there had been a technical violation of the automatic stay, the Plaintiff was

---

[15] *See* TR 14 (denoting Transcript of trial at page 14).
[16] TR 16.
[17] TR 21.
[18] TR 39.

unable to meet his burden of proof showing a willful violation of the automatic stay."[19] Appellant filed a timely notice of appeal.

### III. DISCUSSION

Once a bankruptcy petition is filed, section 362 provides for the automatic stay of any and all proceedings against a debtor. *See* 11 U.S.C. § 362(a).

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*Budget Service Company v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 292 (4th Cir. 1986) (citations omitted). Section 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).

The facts in this appeal are not in dispute. Appellee does not dispute that the automatic stay prohibits the continuation of any judicial action, including a process of garnishment, in an attempt to collect a pre-petition debt.[20] Appellee acknowledges that he received actual notice of appellant's bankruptcy filing, and that he failed to take immediate action with regard to the release of the garnishment obtained against appellant upon notice

---

[19] ROA 5.
[20] *See* Brief of Appellee at 8.

of appellant's bankruptcy filing.[21] Further, appellee concedes that case law imposes upon a creditor the affirmative duty to dismiss a garnishment upon receiving notice of a bankruptcy filing.[22] *See, e.g., In re Pulliam*, 262 B.R. 539 (Bankr. D. Kan. 2001); *In re Manuel*, 212 B.R. 517 (Bankr. E.D. Va. 1997); *In re Timbs*, 178 B.R. 989 (Bankr. E.D. Tenn. 1994). Appellee asserts that he never "purposefully failed to dismiss the garnishment,"[23] and that he was confused regarding who bore the affirmative duty to take action to release the garnishment. Thus, appellee maintains that he lacked the requisite intent to subject him to sanctions for violating the automatic stay.

Although not directly addressed by the Eleventh Circuit,[24] the prevailing authority among the circuit courts of appeals that have confronted the issue holds that a willful violation of the automatic stay does not require specific intent, but is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation. *See Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 227 (9th Cir. 1989); *see also Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999); *Crysen/Montenay Energy Co. v. Esselen Associates, Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1105 (2nd Cir. 1990); *Price v. United States*, 42 F.3d 1068, 1071 (7th Cir. 1994); *Cuffee v. Atlantic Business and Community Development Corp. (In re Atlantic Business and Community*

---

[21] *Id.*

[22] *Id.*

[23] *Id.* at 9.

[24] The Eleventh Circuit has addressed the issue of willful violations in the context of the court's contempt powers under 11 U.S.C. § 105. *See In re Jove Engineering, Inc.*, 92 F.3d 1539 (11th Cir. 1996).

*Development Corp.*), 901 F.2d 325, 329 (3rd Cir. 1990); *Diviney v. NationsBank of Texas* (*In re Diviney*), 225 B.R. 762 (10th Cir. BAP 1998). "The willfulness requirement refers to the deliberateness of the conduct and the knowledge of the bankruptcy filing, not to a specific intent to violate a court order." *In re Timbs*, 178 B.R. 989 (Bankr. E.D. Tenn. 1994) (citations omitted). Thus the fact that appellee did not intend to violate a court order does not absolve him from liability for failure to adhere to the automatic stay. One court has explained the relevance of a creditor's good intentions as follows:

> The only solace for the creditor who winds up willfully violating the automatic stay without meaning to do so is that a good heart may figure in the assessment of § 362(h) damages. Sympathetic facts may be used to avert punitive damages and, in view of the trial judge's discretion over calculation of actual damage awards, may also figure into the calculus of actual damages.

*In re Campion*, 294 B.R. 313, 318 (9th Cir. B.A.P. 2003).

Appellee cites two cases in support of his position that he did not *willfully* violate the automatic stay. First, appellee relies on the following language from *In re Zunich*, 88 B.R. 721, 725 (Bankr. W.D. Pa. 1988):

> Sanctions for contempt are inappropriate under the Bankruptcy Code where a mere technical violation of the stay has occurred or where the litigant has acted in good faith. In such an instance there is an absence of that element of willfulness of maliciousness usually required before a court will issue sanctions.

This reasoning is somewhat suspect in light of the Third Circuit's subsequent adoption of the so-called *"Bloom* standard"[25] in *Cuffee v. Atlantic Business and Community Development*

---

[25] *See Goichman v. Bloom* (*In re Bloom*), 875 F.2d 224, 227 (9th Cir. 1989) and *supra* at 6.

Corp. (*In re Atlantic Business and Community Development Corp.*), 901 F.2d 325, 329 (3rd Cir. 1990). Secondly, appellee cites *Kanipe v. First Tennessee Bank* (*In re Kanipe*), 293 B.R. 750 (Bankr. E.D. Tenn. 2002), for the proposition that his actions were not a "willful" violation. *Kanipe* is distinguishable, however, in that it is a case involving a post-discharge civil contempt proceeding. *Cf. In re Jove Engineering, Inc.*, 92 F.3d 1539, 1545-46 & n.5 (11th Cir. 1996) (discussing varying levels of the abuse of discretion standard of review for civil contempt proceedings in the context of violation of the automatic stay).

Appellee maintains that his violation was merely a technical violation, because he relied on state court personnel who informed him that it was not *his* responsibility to release the garnishment, but that it instead was the responsibility of *appellant's counsel.* Further, appellee points to the fact that he returned all funds that were garnished after the bankruptcy filing date to appellant as soon as practicable. These arguments are all relevant to the amount of damages that may be assessed for violation of the automatic stay. These arguments do not, however, take away from the fact that appellant knew of the bankruptcy as early as June 2002, was notified by appellant's counsel that he needed to release the garnishment, and that appellant did nothing to release the garnishment until September 24, 2002, after the adversary action was filed. Appellee, at his own risk, chose not to retain counsel until the adversary proceedings began. A "creditor's inaction can be as detrimental to a debtor as affirmative collection efforts." *In re Pulliam*, 262 B.R. 539, 543 (Bankr. D. Kan. 2001). Further, courts frown upon attempts by creditors to shift responsibility to the debtor, local courts, counsel,

8

and anyone else but themselves when they receive notice of a bankruptcy filing, but do nothing to reverse the garnishment proceedings. *See, e.g., In re Johnson*, 253 B.R. 857, 862 (Bankr. S. D. Ohio 2000) (stating that the creditor's position of shifting responsibility for the litigation he commenced upon the municipal court "conflicts with the reality that the parties to the litigation control the capacity to alter the shape of or stop their own litigation, not the clerical staffs of courts."). While the court agrees that appellee's conduct was not egregious, it does meet the definition of "willful" for purposes of section 362(h).

## IV. CONCLUSION

Accordingly, the decision of the United States Bankruptcy Court for the Northern District of Alabama is REVERSED, and the matter is REMANDED for consideration of damages, including costs and attorney's fees incurred by appellant in both the adversary proceeding below and on this appeal. A separate order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this **3rd** day of October, 2003.

_____
United States District Judge